E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
THOMAS F. RYBARCZYK (Cal Bar No. 316124)
BILLY JOE MCLAIN (Cal Bar No. 290682)
Assistant United States Attorneys
DANIEL J. O'BRIEN (Cal. Bar No. 141720)
Senior Litigation Counsel
Public Corruption & Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-8452/6702/2468
     E-mail:    thomas.rybarczyk@usdoj.gov
                billy.mclain@usdoj.gov
                daniel.obrien@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>RYAN WRIGHT,<br>　aka "Ryan Petetit,"<br><br>　　　　Defendant. | No. CR 23-492(A)-PA<br><br>GOVERNMENT'S SENTENCING POSITION |

　　　Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Thomas F. Rybarczyk, Billy Joe McLain, and Daniel J. O'Brien, hereby files its Sentencing Position for Defendant Ryan Wright.

///

///

///

This position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 29, 2024            Respectfully submitted,

                                            E. MARTIN ESTRADA
                                            United States Attorney

                                            MACK E. JENKINS
                                            Assistant United States Attorney
                                            Chief, Criminal Division

                                                     */s/*
                                            THOMAS F. RYBARCZYK
                                            DANIEL J. O'BRIEN
                                            BILLY JOE MCLAIN
                                            Assistant United States Attorney

                                            Attorneys for Plaintiff
                                            UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

I.    INTRODUCTION......................................................1

II.   STATEMENT OF FACTS................................................3

      A.   Defendant's Bribery Conduct................................3

      B.   Defendant's Fraudulent Conduct.............................8

III.  ARGUMENT..........................................................8

      A.   The Guidelines Calculation: Defendant's Total Offense
           Level Is 23, and His Guidelines Range Is 51-63 Months.....8

      B.   The Government's Recommendation: A Sentence of 60
           Months' Imprisonment Is Necessary to Punish and Deter.....9

           1.   A Significant Prison Sentence Must Be Imposed to
                Punish Defendant for His Bribery Conduct.............9

           2.   Defendant Needs a Significant Sentence to Deter
                Both Him and Others from Engaging in the Same
                Conduct.............................................10

IV.   CONCLUSION.......................................................12

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant RYAN WRIGHT ("defendant") wanted to ensure success of his real estate company's projects in the City and County of San Luis Obispo.  That meant making sure his projects got the necessary governmental approvals.  Leaving nothing to chance, defendant bought and paid for the power wielded by San Luis Obispo County Supervisor ADAM HILL[1] ("HILL"), a man who once told defendant "[n]obody wants to fuck with their county supervisor when its me."  HILL was elected to a seat representing a majority of the City of San Luis Obispo ("City"), and therefore he was in a unique position to have power and influence over both the City's agents as well as those working for and representing the County of San Luis Obispo ("County").  This power was what defendant wanted to buy to ensure his company's projects' successes, and it is what he paid for with over $95,000 in bribes over two-plus years.  In exchange, HILL delivered.  Not only did he twice vote for defendant's company's projects, HILL also advocated, "push[ed]", and "work[ed] behind the scenes" to ensure the success and advancement of one of defendant's City projects, the San Luis Square project.  And, by defendant's own words, HILL succeeded, earning defendant's effusive praise for his work influencing City officials and a "friendly bonus" of $15,000 because, as defendant said, HILL was a "huge fucking help" and a "difference maker."

For his bribery, defendant pled guilty pursuant to a written plea agreement to Count 1 of the First Superseding Indictment charging him with Conspiracy to Commit Honest Services Wire Fraud, in

---

[1] HILL is referred to in the charging documents and plea agreement as County Supervisor 1.

violation of 18 U.S.C. § 371.  On October 23, 2024, the United States Probation and Pretrial Services Office ("USPO") filed a Presentence Investigation Report ("PSR") in which it determined that defendant's total offense level under the United States Sentencing Guidelines ("U.S.S.G.") is 25, his criminal history category is II, his Guidelines sentencing range is 60 months' imprisonment, and his Guidelines fine range is between $20,000 and $200,000.

Aside from its application of the two-level upward adjustment for obstruction of justice under U.S.S.G. § 3C1.1,[2] the government concurs in the USPO's findings, including its conclusion that defendant is a Criminal History Category II, and believes that the appropriate total offense level in this case is 23, which results in a Guidelines sentencing range of 51-63 months' imprisonment.  Given the sophisticated nature of defendant's bribery, his efforts to conceal it, and his later fraudulent conduct committed while he knew he was under federal investigation, a significant sentence is necessary to specifically deter this defendant.  Just as important, a significant sentence is needed to generally deter political bribery. After all, it erodes the very fabric of American society because elected representatives are supposed to make decisions based solely on what's in the best interest of their constituents, not based on the best interest of their own pocketbooks.  For these reasons and others discussed below, a sentence of 60 months' imprisonment followed by a three-year term of supervised release and a $100 special assessment is sufficient, but not greater than necessary, to

---

[2] In the plea agreement, the government and defendant agreed that the appropriate total offense level in this case is 23.  The government requests that the Court honor the parties' agreement and give defendant the benefit of his bargain.

comply with the factors set forth in 18 U.S.C. § 3553(a).  Consistent with the plea agreement, the government recommends no fine.  Any monetary penalty should be paid through restitution.[3]

**II.  STATEMENT OF FACTS**

    **A.  Defendant's Bribery Conduct**

    Defendant and HILL began their bribery conspiracy in the summer of 2014, just as defendant's company, PB COMPANIES, LLC, had several projects requiring governmental approvals from the City and County.  From the outset, defendant understood the need to conceal their bribery scheme.  To do so, defendant, his business partner, JOHN BELSHER, and HILL agreed to form San Luis Consulting LLC to, as BELSHER suggested, "protect all three" of them.  Defendant noted that BELSHER believed "put[ting] a gag order on all three of us [is a] good idea[]," as defendant warned "[l]oose lips sink ships."  For his part, HILL agreed with the concealment and keeping their conspiracy "private," particularly since it meant he could hide the bribes he received from defendant and PB COMPANIES on his publicly-filed Statement of Economic Interest, commonly referred to as a Form 700.

    Shortly after agreeing to the bribery conspiracy, HILL began to perform his end of the bargain.  In July 2014, HILL publicly addressed the City's Architectural Review Commission ("ARC")[4] with respect to a PB COMPANIES's project that would later become part of the larger San Luis Square project.  In speaking about that project,

---

[3] The government intends to meet with counsel for defendant to attempt to reach agreement on restitution.  If agreement cannot be reached, then the government intends to request a deferred restitution hearing.  See 18 U.S.C. § 3664(d)(2)(5).

[4] The ARC was responsible for establishing architectural guidelines and rules on the design of new construction and major commercial developments, and its members were appointed by the City.

HILL addressed the concerns of a neighborhood group objecting to the height and design of defendant's project and said that "we don't want to stifle projects by chopping off floors . . . ."  While HILL indicated he worked in the County building (a not so veiled reference to his position as a County supervisor), he did not disclose his financial arrangement with defendant and PB COMPANIES.  Later that day, HILL forwarded an email to defendant from one of the ARC commissioners who commented favorably on the project and added that it was "[n]ice to see you in the room tonight. . . that [Marsh] project has great promise."  HILL added in his email to defendant: "Just so you see the value of my help....(Don't pass on)."

    Defendant saw the value of HILL's help and within a matter of days paid HILL $2,500 –- the first of many as part of their bribery agreement. In the end, defendant arranged for $94,234 in bribes to be paid to HILL or his shell company, San Luis Consulting.  Beyond that, defendant also paid for other benefits for HILL, including $1,867 for HILL's semi-private jet ride, his hotel, and a front-row ticket to watch his favorite baseball team play in the National League Championship Series in San Francisco.  On the following page are photographs from that trip seized from defendant's hard drive:




Shortly after returning from his San Francisco trip and receiving $4,950 from defendant and PB COMPANIES, HILL cast his vote on December 16, 2014 in support of the Toad Creek Homes, LLC project's final map, the first of two votes he would take in favor of PB COMPANIES's projects during the bribery conspiracy. Within the next two weeks, defendant arranged for HILL to receive nearly $13,000 in payments.

Over the next several months, defendant continued to pay HILL thousands of dollars as he recognized the importance of HILL to successfully obtaining their approval of City projects, including San Luis Square. For example, he told a San Luis Square investor that they were arranging for $25,000 to HILL's re-election campaign because if "we loose [sic] him it's bad for us Down town," an

apparent reference to the City's downtown where the San Luis Square project was located.

Defendant did not lose HILL.  Instead, the self-dubbed "consigliere" to defendant, HILL helped make sure that the San Luis Square project progressed through City approval process without any unnecessary roadblocks, including any recommendation that PB COMPANIES reduce the project's height.  At defendant's request, HILL "worked behind the scenes" with City officials and "push[ed]" the then Community Development Director to support the San Luis Square project ahead of a key, joint ARC and Cultural Heritage Commission ("Cultural Heritage Commission") meeting in July 2015 for the project's conceptual review.  HILL even met privately with an ARC commissioner who defendant later recognized took "the lead" during the meeting on voicing strong support for the project.  But that was not enough for defendant.  He wanted HILL to publicly address the meeting, something HILL initially declined to do.  Defendant did not take no for an answer and instead told HILL: "I'm just being honest [BELSHER] and my partners have been counting big time on your voice in the hearing."

After defendant's prodding, HILL relented and then vigorously delivered for defendant and his partners at the meeting.  He told the joint meeting that he "represent[ed] 62% of the City in the County", that the San Luis Square project was the solution to the City's housing shortage, and he hoped the commission would "work with the project applicants to find ways to make this work economically." Defendant was thrilled with HILL's performance, even asking if HILL "drug[ged] these ppl."

6

For his part, HILL told BELSHER he "spoke with everyone I needed to and it worked," "[ARC commissioner 1] told me my comments made the difference with ARC," and "[s]o did [a CHC member] with CHC." HILL later told defendant that he heard a City official who saw HILL speak at the meeting remark that the "the big dog showed up and got the biggest downtown project approved." Defendant rewarded HILL in August 2015 by paying him $25,000.

In November 2015, defendant was arrested on felony domestic violence charges, which is when his and HILL's conversations cooled. Then, in August 2016, defendant reached back out to HILL and let him know that his project in Templeton (an unincorporated part of the County) had just been approved. Over the next couple weeks, defendant told HILL he would get him a $10,000 donation to his campaign from his "buddies wife" and that he was working on "funneling money" for it. As HILL waited for that money, he took another vote in favor of a PB COMPANIES project, this time he voted in favor of the final map for Las Tablas Villas LLC in Templeton. Just over a month later, on November 23, 2016, defendant wired $10,000 to HILL's San Luis Consulting account from the PB COMPANIES account. After doing so, he told HILL: "You earned it."

HILL did not report the $10,000 payment from defendant and PB COMPANIES on his Form 700 for 2016, which he filed on March 29, 2017.[5] Believing the bribery conspiracy was still alive and well, BELSHER reached out to HILL in late May 2017 after the San Luis Square project received negative feedback from the CHC and said

---

[5] While HILL initially disclosed income from his shell company, San Luis Consulting, on his 2014 Form 700, he omitted it from his 2015 Form 700 like he did on his 2016 Form 700. Further, he never disclosed the true source of his 2014 income, which was PB COMPANIES.

7

"[t]ough night at CHC last night" and asked if HILL had time to talk. According to HILL's text messages seized from his digital device, he told BELSHER he was "out of the help business."

### B. Defendant's Fraudulent Conduct

Defendant's criminal conduct did not end with his bribery, nor his domestic violence. Indeed, in 2022, after he knew he was under federal investigation for bribery, defendant engaged in investor fraud and attempted bank fraud schemes. (PSR ¶¶ 74-105.) Defendant used the embezzled funds to pay for numerous personal expenses, including strip clubs, high-end restaurants, night clubs, lease payments, and even the criminal defense attorneys related to the charges in this case. (PSR ¶¶ 91-92.)

## III. ARGUMENT

### A. <u>The Guidelines Calculation</u>: **Defendant's Total Offense Level Is 23, and His Guidelines Range Is 51-63 Months**

Pursuant to the terms of the plea agreement, the government and defendant agreed to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 12 | U.S.S.G. §§ 2X1.1(a), 2C1.1(a)(2) |
| More Than One Bribe: | +2 | U.S.S.G. § 2C1.1(b)(1) |
| Value of the Bribe: | +8 | U.S.S.G. §§ 2C1.1(b)(2), 2B1.1(b)(1)(E) |
| Elected Official: | +4 | U.S.S.G. § 2C1.1(b)(3) |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1(b) |

These agreed upon Guidelines result in a total offense level of 23. The government and defendant both agreed in the plea agreement to not seek any additional specific offense characteristics or adjustments.

8

The USPO determined that defendant is a Criminal History Category II. (PSR ¶ 113.)  The government concurs.

Accordingly, defendant's Guidelines range is 51 to 63 months' imprisonment.

### B. The Government's Recommendation: A Sentence of 60 Months' Imprisonment Is Necessary to Punish and Deter

In determining a sufficient sentence, courts must consider the nature, circumstances, and seriousness of the offense. 18 U.S.C. § 3553(a). So too must courts weigh the need for a sentence to afford adequate deterrence, just punishment, and promote respect for the law.  Id.  Given careful consideration of all these factors as well as the other Section 3553 factors, the government respectfully requests a sentence of 60 months' imprisonment.  Such a sentence is sufficient, but not greater than necessary, to adequately punish and deter this particular defendant for the pernicious crime of conspiring to commit honest services wire fraud.

#### 1. A Significant Prison Sentence Must Be Imposed to Punish Defendant for His Bribery Conduct

Defendant's bribery here was not just a one-off payment, a singular mistake, or bad choice.  Instead, it was purposeful, planned, and an intentional effort to fix the system, thereby undermining the integrity of the City and County's processes just to line his pockets.  But like all corruption-related offenses, defendant's crime not only undermined the integrity of the governmental processes at play, it also undermined the public's trust in their elected officials and the institutions they serve.  See United States v. Spano, 411 F. Supp. 2d 923, 940 (N.D. Ill. 2006), affirmed, 477 F.3d 517 (7th Cir. 2006) ("Public corruption

9

demoralizes and unfairly stigmatizes the dedicated work of honest public servants. It undermines the essential confidence in our democracy and must be deterred if our country and district is ever to achieve the point where the rule of law applies to all--not only to the average citizen, but to all elected and appointed officials."). Indeed, in the recent case of corrupt Los Angeles County Councilman Jose Huizar who was sentenced to 13 years' imprisonment, the Honorable John F. Walter, United States District Court Judge, observed the following concerning the crime of bribery and its pernicious effects on the citizenry:

> There could be no crime more serious than bribery. Other offenses involve one law while corruption strikes at the foundation of all law. Under our form of government, all authority is vested in the people and by them delegated to those who represent them in official capacity. There can be no offense heavier than that of him in whom such a sacred trust has been reposed, who sells it for his own gain and enrichment, and no less heavy as the offense of the bribe giver. He is worse than the thief for the thief robs the individual while the corrupt official plunders an entire city or state. He is as wicked as the murderer, for the murderer may only take one life against the law while the corrupt official and the man who corrupts the official alike aim at the assassination of the commonwealth itself. Government of the people, by the people, for the people will perish from the face of the earth if bribery is tolerated.

United States v. Huizar, no. 20-CR-326(A)-JFW-1, 01/26/2024 RT 70:5-20, Dkt. 1299 (C.D. Cal. 2024) (quoting President Theodore Franklin Roosevelt). The seriousness of defendant's offense requires a significant sentence.

    2.    <u>Defendant Needs a Significant Sentence to Deter Both Him and Others from Engaging in the Same Conduct</u>

Defendant is not like many white-collar defendants who come before this Court. He has previously been convicted of five felonies

related to a brutal attack on his then girlfriend, for which he was sentenced to 270 days in jail.  (PSR ¶ 111.)

His conviction there and his knowledge that he was under federal investigation for bribery in this case did not prevent defendant from committing fraud.  As detailed in the PSR and First Superseding Indictment, defendant engaged in a wire fraud and attempted bank fraud schemes after these events.  The fact that defendant knew he was under federal investigation and yet still engaged in fraud supports the conclusion that a significant sentence is needed to specifically deter this defendant.

Just as important here, as with all corruption cases, is the need for general deterrence.  Sentences fashioned to ensure general deterrence are an especially effective tool in corruption cases, as public officials and other white-collar criminals often premeditate their crimes and engage in a cost-benefit analysis. See, e.g., United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidate[s] for general deterrence. Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment.") (internal quotations and citation omitted). "General deterrence comes from a probability of conviction and significant consequences. If either is eliminated or minimized, the deterrent effect is proportionately minimized." United States v. Morgan, 635 F. App'x 423, 450 (10th Cir. 2015). By their very nature, public corruption and white-collar crime are often hard to detect,

11

making enhanced general deterrence even more necessary. See United States v. Brown, 880 F.3d 399, 405 (7th Cir. 2018) (district court did not err in relying on the notion that white-collar criminals were prime candidates for general deterrence; district court was entitled to conclude that where there was a lower likelihood of getting caught, a serious penalty was necessary to ensure deterrence).  A significant sentence is warranted here for general deterrence, too.

**IV.  CONCLUSION**

For the foregoing reasons, the government requests that this Court sentence defendant to 60 months' imprisonment, a three-year term of supervised release, and a $100 special assessment. Consistent with the plea agreement, the government recommends no fine.  Any monetary penalty should be paid through restitution.